| 117 | 207 |
| 128 | 70 |
| 117 | 207 |
| 129 | 411 |

| 117 | 207 |
| 138 | 714 |

JAMES SHEHAN, Appellant v. JOHN R. STUART, *et al.*

**Want of Service of Notice: EVIDENCE:** *Recitals in decree.* The positive testimony of one against whom a decree was entered that no service of notice was ever made upon him, and the testimony of the sheriff, who made the service and the return that he would have been likely to remember it if he had made it, and that he did not remember making it, was, in the absence of the return, sufficient to overcome the presumption of service arising from recitals of personal service contained in the decree, supported alone by entries of such service in appearance docket and fee book.

**SAME.** Where a defendant against whom a decree has been entered denies that service was ever made upon him, a recital in appearance docket of service by reading and leaving a copy of the process is inconsistent with any presumption of service by leaving a copy with a member of defendant's family in his absence, and will not support a contention that service may have been made in this way.

**Same.** Where the purchaser of land under foreclosure waited twelve years before asserting title, and then allowed the owner, who was in possession at the time of the sale, to remain in undisturbed possession and pay taxes all this time, the purchaser's negligence was evidence, in an action by him against such owner for possession of the land, tending to support defendant's contention that he was not served with notice of the foreclosure proceedings.

**LACHES:** *In absence of actual knowledge of decree.* Where a decree foreclosing a mortgage on land is entered without notice to the owner of the land, in the absence of actual knowledge of such decree, the general records of the court relating thereto, do not charge the owner with such knowledge thereof as will require him to sue to attack a title based on such decree within a reasonable time of its rendition, in order not to be guilty of laches.

**Transfer to Equity:** *Waiver of objection.* Where defendant in an action at law filed an equitable cross bill involving the same issues as the law action, and the cross bill was transferred to the equity docket, a stipulation that the issues arising on the petition might be tried with those on the cross bill, with a

6 waiver of a jury, necessarily implied a consent that both cases might be tried together, and was a waiver of objection to the transfer of the law case to the equity docket.

*Appeal from Sac District Court.*—Hon. Z. A. CHURCH, Judge.

FRIDAY, MAY 23, 1902.

ACTION to recover possession of a 40-acre tract of land. Defendant Stuart, by cross petition, asked to have his title to the premises quieted. Judgment and decree for defendants. Plaintiff appeals.—*Affirmed*.

*H. E. Long* for appellant.

*W. A. Helsell* and *Tait & Jackson* for appellees.

McCLAIN, J. Plaintiff's chain of title to the premises in controversy begins with a conveyance of swamp land by Sac county to the trustees of the American Emigrant Company in 1870, including this 40-acre tract with other portions of the same section. In 1883 the American Emigrant Company purported to convey this tract, with others, to one Wright, who gave back a mortgage for a portion of the purchase price. By assignment this mortgage passed to James Callanan and J. C. Savery, who, in 1886, brought action in equity to foreclose the same on the premises described therein, including the tract involved in this case, making Stuart, who is defendant in this case, a party. In the same year a decree was entered by default against all the defendants, ordering special execution, and declaring that the right, title, and interest of each and all of the defendants were junior and inferior and subject to the rights of the plaintiff therein under the mortgage, and barring the equity of redemption of each of said defendants. The plaintiff in the foreclosure bought in the land at execution sale, and by subsequent conveyance all except

the tract in controversy passed to one grantee, while this particular tract, by deed without warranty, passed to plaintiff. There is no evidence in the record that this tract ever belonged to Sac county as swamp land, and therefore plaintiff's title rests entirely on the foreclosure decree and sale thereunder. Defendant sought to impeach plaintiff's title by showing that no service of notice in the foreclosure proceeding was made upon him, and by way of equitable cross bill asked that his title in the premises be quieted as against plaintiff, relying on a chain of title from the United States under a railroad grant and possession for nearly 20 years. As between plaintiff's pretended title under the swamp-land grant and defendant's title under the railroad grant, there seems to be no doubt that the latter should prevail. *Young v. Charnquist*, 114 Iowa, 116. The sole question, therefore, on this appeal, is whether defendant Stuart was served with notice of the foreclosure proceeding. Plaintiff relies on the presumption arising from the recitals of the decree and entries in the appearance docket and fee book, made by one Lane, indicating that he had before him, when such entries were made, an original notice, with the officer's return showing service on Stuart; also Lane's testimony to the effect that he would not have made such entries had there not been such a return of service. Defendant Stuart relies on his own testimony that no such service was made upon him, and the testimony of the person who was at the time sheriff that he had no recollection of serving the notice on Stuart, and that he thought he would, by reason of circumstances related by him, have recalled the fact if he had made such service, as Stuart was personally well known to him at the time. The original notice and return were not introduced in evidence, and there was some showing that the paper might have been consumed in a fire which destroyed the court house and many of the records kept in the clerk's office after the entry of the decree.

It is well settled in this state that the presumption arising from the recitals of notice in a decree may be overcome by evidence showing that no service was actually made, and the only question we have to consider in this connection is whether the evidence is sufficient as against such presumption. It is to be noticed that the conflict here is not between the officer's return, showing personal service, and the testimony of the defendant that no such service was made. The evidence furnished by the entry on the appearance docket and fee book, indicating that there was a return of personal service on Stuart, is by no means equivalent in weight to the return itself. There is not even the testimony of the clerk that he saw such return, except as he infers that fact from the entries which he made. It is evident that there were opportunities for mistake which render these entries far less persuasive than would be the authenticated return of the sheriff. This court has considered the sufficiency of evidence to overcome the presumption arising from the recitals of the decree in the absence of the officer's return of service, in *Jamison v. Weaver*, 84 Iowa, 611; *Squires v. Jeffry*, 101 Iowa, 676; and *Farnsley v. Stillwell*, 107 Iowa, 631. In the *Jamison Case*, though there was some evidence to support the recital, the testimony of the defendant and the sheriff that no service was made was held sufficient to overcome the presumption, but in that case some weight was given to the fact that the appearance docket did not show return of service. In the *Squires Case*, the testimony of the defendant that no service was made, and of the justice that he had no recollection of the return of service, coupled with the fact that no effort was made for many years to collect the judgment, were held sufficient to overcome the presumption arising from the judgment entry. In the *Farnsley Case*, the recital of the judgment, supported by the testimony of plaintiff's attorney that there had been a return of service, was held sufficient as against the testimony

of persons in charge of defendant, who at the time was helpless from paralysis, that no service had been made (the defendant himself being at the time of the trial incompetent to testify), and this, too, notwithstanding the fact that the appearance docket and fee book did not show that any return of service had been made. It will be seen that the case before us has points of analogy with each of these cases, but is not exactly like any of them. Without further discussion, it is sufficient to say that we think the presumption arising from the recital of the decree, supported alone by entries in the appearance docket and fee book, is overcome by defendant's positive testimony that no notice was served upon him, and the testimony of the sheriff, who, as appears from the entry in the appearance docket, made the service and return which that entry purports to show, and who states that, under the circumstances, he would have been likely to have remembered the fact, if it had been a fact, that he has no recollection of making such service. Counsel for appellant urges for the first time in his reply argument that service might have been made by leaving a copy with some member of defendant's family in his absence, but the entry in the appearance docket purports to show service by reading and leaving copy, which is not consistent with service by leaving a copy with a member of Stuart's family.

It is also argued for appellant that Stuart has been guilty of laches, which should defeat his right to equitable relief; but there is no evidence that he had any knowledge that the foreclosure proceeding covered or had any reference to his land, until demand was made of him for possession, not long before plaintiff's suit was brought. It is true, such demand for possession was prior to the conveyance to plaintiff, but there had not been such lapse of time as to charge him with laches and defeat his claim as against plaintiff's title. It cannot be said that he was bound to know from the general records of

the court that judgment had been rendered against him in a case in which he had been served with no notice, and that he must bring his action attacking a title based on such judgment within a reasonable time after its rendition. *Jamison v. Weaver*, 84 Iowa, 611, 615. The fact is that the argument with reference to laches might well be used. the other way. Plaintiff's grantors acquired title under the foreclosure proceeding about 13 years before this action was brought, and Stuart was then in possession of the premises, but they allowed him to remain in undisturbed possession and pay taxes without any steps whatever to assert their right for at least 12 years; and we think that this fact alone not only indicates negligence no their part, but also tends to support the showing of Stuart that no service upon him was actually made.

Error is assigned in the ruling of the trial court transferring the case to the equity docket on defendant's motion, and it is insisted that plaintiff was entitled to a jury trial in his action to recover possession, which involved the very question of want of service of notice which was adjudicated in a determination of Stuart's cross petition in equity to have his title quieted. But it appears that this ruling was as to the cross bill only, and that, after it was made, counsel for plaintiff entered into a stipulation of record by which the issues arising on plaintiff's petition were tried with the issues arising on Stuart's cross bill, and a jury was waived. We think the intention of this stipulation was that the law action and the equity suit should be tried together, and that this should be a waiver of any question arising under the motion to transfer the law case to the equity docket. It is no doubt true that plaintiff could proceed with the trial in equity without waiving his right to rely on an exception to the ruling of the court transferring the law case to the equity docket; but the stipulation evidently means more than this, and necessarily implies a consent to try the law case in connec-

tion with the equitable issues arising on Stuart's cross bill, for otherwise there would have been no occasion to stipulate for the waiver of a jury.—AFFIRMED.