IOWA NATIONAL BANK, Appellant, v. JOHN COOPER, ET AL.

**Principal and surety:** RIGHTS OF SURETY: EXHAUSTION OF OTHER
1  SECURITIES. Where a bank accepted for a loan the joint note of several parties taking as security corporate stock issued to the makers jointly and other stock of the corporation issued to one of the makers, and at the time of execution of a renewal note the bank was advised that one of the makers was principal and those to whom the joint stock was issued were simply sureties, such sureties were entitled to have the proceeds of a sale of the principal's stock applied on the note without deduction of assessments paid by the bank on the joint stock.

**Insurance:** IMPAIRMENT OF CAPITAL: ASSESSMENTS. An insurance
2  company, notwithstanding the provisions of Code, Sections 1731 and 1732, may enforce assessments for the purpose of making good a depletion of its capital, which are made prior to a requisition from the Auditor of State to assess the stockholders for that purpose.

**Corporations:** ASSESSMENT OF STOCK: PAYMENT BY PLEDGEE: ES-
3  TOPPFL. Where the holders of corporate stock were directors in the corporation issuing the stock to them and they participated in a stock assessment to restore the impaired capital of the corporation, the placing of the stock by them as such directors as collateral security for a loan with which to pay the assessment, warranted the lender in assuming personal assent on their part to the payment by him of the assessment. And upon a review of the evidence it is held further that the lender was justified in regarding such stockholders the real as well as the apparent owners of the stock and therefore estopped to question the authority of the lender to pay the assessments.

*Appeal from Polk District Court.*— HON. JAMES A. HOWE,
Judge.

SATURDAY, MAY 19, 1906.

REHEARING DENIED THURSDAY, OCTOBER 25, 1906.

ACTION to recover $10,260 and interest on a promissory note signed by John Cooper, A. H. McVey, R. J. McKee, and Geo. A. Jewett, defendants.   The defendants other than Cooper allege that they are sureties only, and that they are entitled to have credited on the note the proceeds of the sales of two certificates of stock in the Fidelity Insurance Company, the one for four hundred and seven shares issued to Cooper, the other for three hundred and eighteen shares issued to all the defendants jointly and denominated " syndicate " stock, claiming that both these certificates were pledged as security for the note.   Plaintiff alleges, however, that the proceeds of the Cooper certificate have been properly applied by it to the payment of assessments on the stock, and that the syndicate stock is still held by it subject to the amount of an assessment advanced by it to the insurance company on the stock; and it denies that the defendants other than Cooper are sureties only.   The case was tried in equity, and the court found that the defendants other than Cooper were sureties, and that they were entitled to have credited on the note the proceeds of the sale of the Cooper stock and any amount for which the syndicate stock should be sold, and disallowed the claim of the plaintiff that it had a lien on the syndicate stock for the amount of assessments advanced thereon which was superior to the claim of the sureties to have the amount which should be realized from the sale of the stock applied as a credit on the note.   Plaintiff appeals.— *Modified* and *affirmed.*

*C. W. Johnston,* for appellant.

*Dudley & Coffin* and *E. H. McVey,* for appellees.

McCLAIN, C. J.— While there is much evidence in the record tending to show that the defendants other than Cooper were his sureties merely in the execution of the note, and his trustees in the ownership of the syndicate stock, the plaintiff bank is entitled to have the relations of the parties in the transaction in regard to the stock, so far as its rights are to be affected, determined in the light of the facts as brought to its knowledge, and we are justified, therefore, in stating the facts primarily as known to it rather than as known to the defendants.

The first connection which the plaintiff bank had with the parties in relation to the subject-matter of the suit was in June, 1900, when, on the application of Cooper, it agreed to loan on a note signed by these four parties the amount represented by the note in suit, and to accept as security a certificate for three hundred and eighteen shares of syndicate stock apparently belonging to the four signers of the note, which certificate had previously been pledged to the Des Moines National Bank for a loan which was to be extinguished by the proceeds of the loan made by plaintiff. There is no evidence that when the first note was executed to plaintiff in June, 1900, any stock not belonging to Cooper individually was pledged or that any such stock had previously been pledged to the Des Moines National Bank; nor is there any evidence that at this time the plaintiff had any knowledge that the three signers other than Cooper were sureties for Cooper. The negotiations for the loan were by Cooper, and the signatures of the others were not affixed by them at the bank, nor, so far at it appears, did the bank have any knowledge of the circumstances under which such signatures had been affixed.

At the maturity of this note in December, 1900, it was proposed by Cooper that the note be renewed, but Jewett was absent in Europe and his signature could not be at once obtained. He returned on December 25th, but we think the evidence shows that he did not actually sign the note until

in January, although it bears the date of December 8th, and that before signing he was assured by the cashier of the plaintiff bank that the shares of stock owned by Cooper as well as the syndicate stock were pledged as security. On the question whether Jewett signed his name to the renewal note, the note on which this action is brought, before he had any conversation with the cashier of the plaintiff bank as to whether Cooper's stock was pledged, and also on the question whether, at the conversation in the bank in January with reference to the renewal note, either before or after he signed it, the certificates of the Cooper stock were exhibited to him as being held by the bank as security for the note, there is direct conflict in the evidence; but we are inclined to hold with the trial court, giving to its findings of fact even in an equity case some weight and consideration in view of the oral evidence being introduced before it and the better opportunity which the trial court has under such circumstances to judge of the credit which should be given to the evidence of the witnesses, that the renewal note was not finally executed and completed until in January, and that at the time it was completed by the addition of Jewett's signature the plaintiff bank was advised that Cooper was the principal obligor and that the other three signers were sureties only, and that at that time the bank held the Cooper stock as well as the syndicate stock as security for such note. The sureties were therefore entitled to have applied in the extinguishment of this note the proceeds of the Cooper stock in the amount of $1,950, for on this stock no assessment was paid by the plaintiff, and, under the circumstances, it had no right to apply the proceeds of this Cooper stock, which was sold subject to the assessment, to the extinguishment of any claim which it had for the assessment advanced by it on the syndicate stock.

In June, 1901, the plaintiff bank loaned $2,000 to the Fidelity Insurance Company, and subsequently made other loans to it amounting, as we understand from the record, to $5,000 in all, and proceedings were threatened to secure

the appointment of a receiver for the insurance company when, in January, 1902, the board of directors of the insurance company at a called metting at which defendants Mc-Vey, McKee, and two other directors constituting the majority of the board were present, a resolution was passed directing an assessment of $30 per share (of the par value of $100 each) " upon all of the shares of the stock of said company, to wit, one thousand shares of same to be due and payable in ten (10) days from this date, to be paid to the company at its office in Des Moines, Iowa," and later in the same month, at another called meeting of the board, at which the same directors were present, a resolution was adopted reciting the making of the assessment and its necessity on account of the impairment of the capital stock, and that new parties were to be installed in the management of the company and some of the old parties released from control, and further, that " upon condition that Dr. John Cooper, Geo. A. Jewett, R. J. McKee, and A. H. McVey still continue to be the owners of the 318 shares of the capital stock of said insurance company, such stock being up as collateral and in the name of H. T. Blackburn, trustee, for a loan of $10,267 by the Iowa National Bank to said parties," and on account of Geo. A. Jewett being absent in England and Dr. John Cooper in Nebraska :

And the parties residing here being unable to advance the assessment on the 318 shares of the Fidelity Insurance Company — in consideration of H. T. Blackburn, trustee, paying the said assessment of $9,540 on the said 318 shares held by him as aforesaid, the said insurance company hereby sells, assigns, and transfers said assessment to said H. T. Blackburn, trustee, in consideration of the payment of said assessment of $9,540 on the said 318 shares, and authorizes him to collect or sue for the same in his name or the name of the company as he sees fit. This is without recourse on said insurance company except for any irregularity or any unlawful proceedings in the making of this assessment.

Between the date of the making of this assessment and the date of the resolution assigning the assessment of the plaintiff bank, the bank had caused inquiry to be made of Jewett, who was again in Europe, as to whether he would guaranty with others the advance of the assessment by the bank, and his cabled response was that he would guaranty to the extent of his share.    Thereupon, in reliance on the resolution of the directors, two of whom were, as already indicated, defendants McVey and McKee, and this cablegram from defendant Jewett, the bank advanced to the insurance company the amount of the assessment on the syndicate stock held by it as security for the note in suit, in the amount of $9,540, and after deducting from that amount the indebtedness of the insurance company to the bank, paid over to the company the balance in cash.

The contention of plaintiff bank is that it is entitled to apply the proceeds that may be raised from the sale of the syndicate stock, first, to the extinguishment of this assess-

1. PRINCIPAL AND SURETY: rights of surety: exhaustion of other securities.
ment paid by it, and only as to any balance over and above that amount is it bound to give credit to defendants on the note in suit.    We think it is not open to the defendants to say that this assessment was made without authority and that the bank was not justified in advancing the assessment on their account.    Defendants McVey and McKee participated as directors in the making of the assessment on all of the stock of the company, including the syndicate stock, of which they appeared to be joint owners, and in the transfer of the claim against them for such assessment to the plaintiff bank. The assessments on all the other stock of the company have been paid.    Defendant Jewett expressly guarantied the payment of his share, and we think that the bank was justified in assuming that these three defendants wished such assessment to be paid without raising any question as to its validity or their personal obligation therefor to the company.

It is true that, under Code, sections 1731, 1732, an in-

surance company which has received a requisition from the State Auditor that it shall make good impairments of its

2. INSURANCE: impairment of capital: assessments.

capital stock cannot enforce assessments made for that purpose as a personal liability on the stockholder, but, on failure of a stockholder to pay such an assessment, the amount of his stock is to be. diminished proportionately.   We see no reason, however, why such a company, before the Auditor has made a requisition, may not assess its stockholders for the purpose of restoring the amount of its impaired capital, thus giving the stockholders the option as they see fit of making good the capital, so that a requisition, assessment, and proportional reduction of their share of the capital may be avoided.   If the stockholders see fit to pay such assessments rather than incur the forfeiture of a part of their stock, we think it perfectly competent for them to do so.   This is just what the holders of this syndicate stock were seeking to accomplish.   Not having the money, or not caring to advance the money, necessary to make good the assessment on their stock and not wishing to forfeit their stock or any part of it, they saw fit to ask that the assessment be advanced by the plaintiff bank.   It is true that defendants McVey and McKee did not personally guaranty the repayment of the assessment thus advanced, but as directors they had participated in the assignment to the bank of the claim against themselves for such assessment, and we think the bank was fully justified in regarding this as a personal assent on their part that the assessment should be paid by it.   Defendant Jewett assented to the arrangement by his cablegram.

But it is contended for the defendants that they were not, in fact, stockholders in the insurance company, and

3. CORPORATIONS: assessment of stock: payment by pledgee: estoppel.

therefore the stock standing in their names, that is, the syndicate stock already referred to, could not be assessed as against them. Their claim is that the syndicate stock, in fact, belonged to Cooper; that they had no personal interest in

it, and that it was therefore wholly immaterial to them whether or not the assessment thereon was paid. We shall not detail all the evidence relating to the ownership of this stock. It is sufficient to say that the scheme of issuing syndicate stock was first conceived by one Lee for the purpose of enabling the Fidelity Insurance Company to absorb two other insurance companies, of one of which defendant Jewett was a director; that defendant Cooper, who was president of the Fidelity Insurance Company, sought to secure and did secure a majority of the stock of the Fidelity Company in his own right; that the syndicate stock first held by these four defendants was in an amount much larger than that now represented by the certificates of three hundred and eighteen shares; that portions of the syndicate stock were disposed of to different parties by Cooper and without direct consultation with the other three holders; and that they have never advanced any money toward the purchase of such stock. But, on the other hand, this syndicate stock was originally issued to the four as joint owners, and was paid for in part by money secured from a bank on a note to which the four were joint signers, and in part by a stock note also signed by them; that the stock has always been carried on the books of the company as belonging to these four persons as joint owners, and that the certificate for three hundred and eighteen shares which was pledged to the plaintiff bank was a certificate of stock thus owned by them. Defendant McVey was continuously, from the time this syndicate stock was first issued down to the time when the assignment of the assessment was made to the plaintiff bank, a director of the Fidelity Company under a provision of its articles by which all its officers and directors were required to be stockholders in the company, without being apparently the owner of any stock except this syndicate stock; and the same thing is true as to defendant Jewett, for, although he claims to have agreed to take five shares of syndicate stock as his own, no such stock has ever been issued to him individually. We find no evidence in

the record of anything charging the plaintiff bank with knowledge that these three defendants were not, in fact, owners in common with defendant Cooper of the syndicate stock, and therefore we reach the conclusion that the plaintiff was justified in assuming that they were, in fact, such owners, and were called upon to determine whether the syndicate stock should be in whole or in part forfeited as the result of their not paying the assessment, and that it was justified in relying upon their action in requesting, as they did, that the assessment apparently made against them as stockholders should be paid by it. While there is much evidence for defendants to indicate that McVey, McKee, and Jewett did not intend to individually become owners of any substantial portion of the syndicate stock and that it was held for the purpose of sale, and that sales were made by Cooper on his own responsibility and without consulting his associates in the syndicate, nevertheless the evidence is not by any means satisfactory that these three defendants did not regard themselves as owners in common with Cooper of such syndicate stock. They had signed the stock note with Cooper and they had joined with Cooper in the borrowing of the money with which the cash payment on the stock was made; whether as sureties for him or as joint principals is immaterial. They may well have been satisfied to allow Cooper to manage the sales of the syndicate stock, but it does not appear that, if sales were made at a profit, they were not to participate in the profits.

One significant fact as to the ownership of this stock is that Cooper insisted on purchasing for himself with his own means and holding in his own name, or in the names of members of his family, a sufficient number of shares of the stock to give him the majority, so that the syndicate stock was not necessary to him for the purpose of securing his own control of the company; and it is evident that the intention was that it be disposed of either by apportionment among members of the syndicate or by sale to others, and a considerable amount of the original syndicate stock was disposed

of to others; the proceeds being used, as we infer from the evidence, in reducing the amount of the original loan procured on the joint note of the members of the syndicate for the purpose of making the necessary cash payment on the stock.

Another significant fact is that about the time the first loan by the plaintiff bank was made on the note signed by these four members of the syndicate, all four of them signed an order on the secretary and manager of the Fidelity Insurance Company for $282.34, payable to Cooper, with the direction that such secretary " charge one-fourth thereof to each of our accounts," and it appears that this amount was paid over to Cooper and charged accordingly and taken out of the compensation to which each was entitled as a director of the company, and it further appears that this money was used by Cooper to pay interest on this joint loan.    We think that, regardless of the question whether McVey, McKee, and Jewett were sureties only for Cooper or jointly liable with him as principals on the note in suit, they were co-owners with him of the syndicate stock, and, being such co-owners, that the plaintiff bank was entitled to rely upon their statements, representations, and assurances, whatever they may have been, in advancing the assessment on such stock.

But however this may be, it is clear that the plaintiff bank had reason to believe they were the real, as they were the apparent, owners of the stock, and as against it they cannot now claim that the bank was not justified by their implied acquiescence in advancing the assessment.    We reach the conclusion, therefore, that the trial court erred in directing the proceeds of the syndicate stock to be applied first on the note in suit to the relief of McVey, McKee, and Jewett as sureties on the note, and that the decree should have been for the sale of such stock and application of the proceeds thereof first to the satisfaction of the plaintiff bank for assessments advanced to the extent of $9,540, with interest, and that the surplus

only, if any, above that amount should be applied to the satisfaction of the note in the discharge of these sureties.

The judgment of the trial court is therefore modified, and the case remanded for a decree in accordance with this opinion. Appellees' motion to strike appellant's reply is sustained.— *Modified* and *affirmed*.

LADD, J., takes no part.