IAZ W. NIBECK, Appellant, v. JOHN REIDY, Appellee.

**JUDGMENTS AND DECREES:** Service of Original Notice—Valid-
1  ity. Service of original notice is jurisdictional. *Held*, no legal
service was made on the wife of one of the defendants. (Sec.
3518, Code, 1897.)

PRINCIPLE APPLIED: A return recited the fact of service
on a wife by leaving a copy with her husband at her usual
place of residence in a county named, without farther description
as to the location of the house. The return was false. The notice
was in truth handed to the husband while he was in a town
some distance from the farm where the wife resided. *Held*, the
attempted service gave the court no jurisdiction.

**JUDGMENTS AND DECREES:** Void Judgment—Action to Annul—
2  Laches—Estoppel. A judgment, void because of lack of jurisdic-
tion, may be set aside and formally annulled, even though the
action to set aside is delayed until such a time that the statute
of limitation has fully run on the indebtedness on which the
judgment was based, no bad motive appearing to have actuated
such delay, and the plaintiff in the action to set aside being
under no obligation to speak.

PRINCIPLE APPLIED: A husband and wife gave one Reidy
three notes, due January 1, 1902, 1903 and 1904, respectively, on
which judgment was rendered in December, 1911. No service was
had on the wife. For some time prior to this last date, the wife
supposed the husband had paid the notes. She first learned to the
contrary in August, 1913, when her husband told her that judg-
ment had been rendered against her on the amount due Reidy.
She delayed action to set aside the judgment until January, 1914,
at which time the statute of limitation had fully run on all
the notes. She did not pay or offer to pay Reidy the amount
due on the notes. ''There was no evidence that she knew or
ought to have known when the notes matured or when they
would be barred by the statute of limitation.'' She explained
her delay in bringing action by showing that she lived on a
farm some distance from the county seat, that they were late in

getting their corn picked and that she was in another state a short time in November, 1913. *Held,* no such delay or conduct as worked an estoppel to set aside the void judgment.

**JUDGMENTS AND DECREES:** Void Judgment—Condition to Annulment—Payment of Original Claim—Good Defense. A void judgment may be set aside and formally annulled without payment or offer to pay the original bona fide claim on which the void judgment is based, when such original claim is barred by the statute of limitation.

PRINCIPLE APPLIED: (See No. 2.)

*Appeal from Buchanan District Court.*—HON. G. A. DUNHAM, Judge.

THURSDAY, JUNE 24, 1915.

ACTION in equity to cancel a judgment on the ground that it is void because there was no service of the original notice upon the plaintiff. Decree for the defendant in the court below. Plaintiff appeals.—*Reversed.*

*Cook & Cook,* for appellant.

*M. A. Smith,* for appellee.

GAYNOR, J.—This is an action in equity to set aside a judgment claimed to have been entered without notice to the plaintiff of its pendency. It appears that on and prior to the 23d day of December, 1911, the plaintiff and her husband were indebted to the defendant Reidy on three promissory notes, as follows: One note for $100, due January 1, 1902; one note for $100, due January 1, 1903; one note for $175, due January 1, 1904. On the 23d day of May, 1911, Reidy brought suit against this plaintiff and her husband upon the notes. A judgment was entered against them both for $375 with costs. The return of the original notice in that suit showed personal service on the husband and, as to this plaintiff, recited that it was served by leaving a true copy at her house, the same being her usual place of residence, with her

husband, C. H. Nibeck, a member of her family, with whom she resided, and who was over fourteen years of age, she not being found in the county. The fact as to the service on this plaintiff is as follows: The deputy sheriff found C. H. Nibeck, the husband, in the town of Stanley, and served the notice personally upon him there. He asked the husband where his wife was and was told that she was at home. The deputy then said, ''I will drive out and serve the notice on her.'' The husband said, ''My wife is not well. Give me the notice. I will give it to her.'' The deputy said, ''That would be no service. I would have to serve it on her personally, or it wouldn't be good.'' The husband said, ''I would rather you wouldn't.'' The deputy said, ''I will serve then on you,'' and he read the notice to the husband and gave him a copy for his wife.

*1. JUDGMENTS AND DECREES: service of original notice: validity.*

This was all the service of the notice upon her. She had no notice or knowledge of the pendency of the action. She did not know there was then any existing indebtedness against either her or her husband in favor of this defendant. She knew that at one time they were indebted to the defendant, but she supposed that it had been settled by her husband. She did not learn of the existence of the judgment until August, 1913. She then learned that the judgment had been entered against her in favor of this defendant, Reidy. At the time this judgment was entered, she did not appear, nor did anyone appear who was authorized to represent her in the cause. This suit to set aside the judgment was commenced in January, 1914. The notes were then barred by the statute of limitations.

At the time the notice was served on this plaintiff in the original suit, she was residing on a farm with her husband some distance from the town of Stanley, and in a different township. There was, therefore, no legal service on the plaintiff of the pendency of this action, giving the court jurisdic-

tion of her person, and the judgment, therefore, as to her, was absolutely void for want of jurisdiction.

The plaintiff is met, in this case, with two defenses:

First. That, at all times since the bringing of the action that resulted in the judgment which is involved here, the plaintiff was informed of the same, and knew of the rendition of the judgment at the time; that she was represented by counsel, who stated in open court that they had been consulted about the case, and asked time to see further whether or not this plaintiff desired to defend the action; that these attorneys afterwards said that there was no objection, and judgment might be entered.

This defense fails upon the facts. There is no evidence that plaintiff authorized anyone to appear for her, or that these attorneys did, in fact, appear for her; that they had any authority to represent her in the cause, and there is no evidence that she knew of the pendency of the action, or of the rendition of the judgment until August, 1913.

Second. That the cause or action against the plaintiff, on which the judgment was obtained, is now barred by the statute of limitations, and that the plaintiff, although at all

2. JUDGMENTS AND DECREES: void judgment: action to annul: laches: estoppel.

times knowing that the judgment was in existence, and knowing that it was obtained on a valid and existing obligation, has delayed the bringing of this action until this late date in order to cheat and defraud the defendant herein, and for that purpose only.

As to this defense, the only substantive fact alleged which the evidence shows to be true is the fact that the notes are now barred by the statute of limitations.

Upon the hearing in the district court, judgment was entered for the defendant, dismissing plaintiff's petition, and from this judgment plaintiff appeals.

This case, under the record made, may be determined on two propositions:

1. Is the plaintiff guilty of laches in not commencing her action to set aside the judgment sooner than she did?

2. Can the plaintiff have the judgment, though void, set aside without first paying, or offering to pay, the amount due on the claims upon which the judgment was entered?

Much of the evidence in this case is confined to an exposé of what the husband knew and did and thought and intended. Much of it is devoted to showing a secret purpose on the part of the husband to delay the bringing of the action until after the notes were barred by the statute of limitations. There is no evidence that the wife knew of the existence of the indebtedness, or that a judgment had been entered against her, until August, 1913. The evidence discloses that she had supposed that her husband had adjusted the indebtedness, and that it no longer existed, and that she did not learn that it had not been adjusted, and that it did exist, until she was informed by her husband in August, 1913, that a judgment had been entered against her upon the indebtedness due Reidy. During all this time, she did nothing to mislead the defendant, or to lull him into a belief that the judgment was binding upon her. The only delay that can be charged against her is found in the time intervening between August, 1913, and January, 1914. There is no evidence that she knew when these notes matured, or when they would be barred by the statute of limitations, or that she had any purpose or intent in delaying the bringing of this suit to secure the advantages of the bar. The judgment was void and she need have done nothing but wait until the defendant attempted to enforce it, and then invoke the rights she herein seeks to have recognized. She owed the defendant no duty to inform him that his judgment was void, and that the notes would be barred in January, 1914.

In determining whether or not the plaintiff was guilty of laches in not commencing this action earlier, we must look to the record. The plaintiff is a woman, the wife of a farmer; lived with him on a farm some distance from the county seat. She did not learn of the existence of this judgment until the

last of August. Her explanation, and the only explanation given of the delay, is as follows:

Q. "How did you happen to find out about this?" A. "There was a party spoke to me about buying my place. When my husband got home, I spoke to him about it. He said, 'We can't sell it.' I said, 'Why?' He said, 'There was a judgment against it.' I asked him who had one. He said, 'Reidy.' I asked him how it came. I told him I supposed Reidy's bill was paid. I knew at one time we owed Reidy, and I supposed it was paid because they had served papers at one time on us, and shortly after that, my husband went to Winthrop, and I supposed he had settled it. That is what he said he was going to do, and when he came back, he said he had drawn up a contract to bale hay for him, and shortly after that, I can't say how many weeks, maybe a couple of weeks, he took his press and went down there and baled hay, and when he got back, I supposed it was paid. I heard of this judgment the last of August, 1913. I waited until I could have a convenient time and then came down to see my attorney. This was in January, 1914. We did not get our corn out until pretty late. I was in Dakota a short time during November."

We do not think the record discloses unreasonable delay, under the circumstances, in bringing the action. The record does not disclose that she was influenced by any improper considerations in delaying the action. It does not show that she knew, or had reason to believe, that the delay would affect, in any way, the defendant's right. The only basis for an inference of wrongful purpose in the delay is the fact that the notes were barred before the action was brought; but, in the absence of any showing that she knew when the notes matured, or when they would be barred by the statute of limitations, no improper motive can be inferred by the delay.

Much of the argument proceeds upon the theory that this plaintiff knew that a judgment had been entered against her

upon a valid claim; that she had secret knowledge that the judgment, although regular upon its face, was in reality void, and purposely waited until the statute of limitations had run against the original claim, before she commenced her action to have the judgment set aside. The argument is that, under these circumstances, she cannot have it set aside without having some defense to the original claim or offering to do equity by satisfying the claim upon which the judgment was entered.

This contention is not supported by the record. There is no evidence of a secret knowledge of the existence of the judgment, or that it was regular or irregular upon its face. There is no evidence that she, from improper motives, or for the purpose of securing undue advantage, delayed the bringing of this action. There is no evidence that she knew, or had reason to believe, or should have known, that the statute of limitations would run against the original claim if the action were delayed until January, or that it had run at the time the action was commenced.

Reliance is had upon what this court has said in *Parsons v. Nutting*, 45 Iowa 404; *Byers v. O'Dell*, 56 Iowa 618, and other cases.

The plaintiff has a good defense against these notes. They are barred by the statute of limitations. She did nothing to lull the defendant into the belief that the judgment against her was valid. She is not compelled to pay a claim that cannot be enforced against her, as a condition precedent to having this void judgment against her set aside.

3. JUDGMENTS AND DECREES: void judgment: condition to annulment: payment of original claim: good defense.

As supporting our conclusions, see *Shehan v. Stuart*, 117 Iowa 207-211; *Jamison v. Weaver*, 84 Iowa 611. In this latter case the court said:

"The judgment was rendered on an account for goods sold and delivered in 1871 and 1872, which account has long since been barred by the statute of limitations, and is not

now a valid claim against the appellee. The judgment being void for want of jurisdiction in the court rendering it, and the account not now a valid claim, and subject to a complete defense, the appellee is entitled to have the judgment cancelled.''

See also *Worrall v. Chase & Co.*, 144 Iowa 665-670.

We think the court erred in dismissing plaintiff's petition, and the cause is, therefore,—*Reversed.*

DEEMER, C. J., LADD and SALINGER, JJ., concur.