COOPER v. JEWETT et al.

(Circuit Court of Appeals, Eighth Circuit.   May 18, 1916.)

No. 4542.

1. ATTORNEY AND CLIENT ⬅70—APPEARANCE—PRESUMPTION.
      It is presumed that an attorney who appears for a party is authorized to do so.
      [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 95; Dec. Dig. ⬅70.]

2. PROCESS ⬅149—SERVICE—EVIDENCE—SUFFICIENCY.
      Evidence *held* to show that defendant was served in an Iowa suit in accordance with Code Iowa 1897, § 3516, authorizing service of process by any person not a party to the action.
      [Ed. Note.—For other cases, see Process, Cent. Dig. §§ 202–205; Dec. Dig. ⬅149.]

3. PRINCIPAL AND SURETY ⬅185—RIGHTS OF SURETY—ENFORCEMENT OF RE-IMBURSEMENT.
      Where, in an action against a principal and his sureties, the petition was amended and other claims included, but notice of amendment was not served on the principal, and his attorneys were then in a hostile attitude, the sureties are, the amount of the claim added by amendment having been satisfied by the sale of collateral delivered by the principal, entitled to reimbursement to the amount of the judgment satisfied by them; that claim having been included in the original notice served on the principal.
      [Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 524–538; Dec. Dig. ⬅185.]

4. COURTS ⬅268—FEDERAL COURTS—JURISDICTION.
      While, broadly speaking, a federal District Court is without jurisdiction of a creditors' suit brought by sureties, who had satisfied a judgment recovered in the state court of another district, the court has jurisdiction of an action at law by the sureties to recover the amount they paid.
      [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 806, 807, 812; Dec. Dig. ⬅268.]

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. COURTS ☞268—FEDERAL COURTS—JURISDICTION.

Where sureties, having satisfied a judgment against their principal in a court of a foreign state, were subrogated to the rights of the creditor, a suit in equity to enforce such rights may be maintained in the federal District Court of a district not including the state where judgment was rendered.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 806, 807, 812; Dec. Dig. ☞268.]

6. PRINCIPAL AND SURETY ☞187—ACTIONS—JUDGMENT.

Code Iowa 1897, § 3773, provides that, in an action by several plaintiffs against several defendants, the court may render judgment for or against one or more of them when a several judgment is proper, leaving the action to proceed against others; section 3779 provides that, when judgment is rendered against a principal and his surety, it shall recite the order of liability; while sections 3966 and 3967 provide for the issuance of execution as against the party primarily liable and for a surety's subrogation to the rights of creditors. *Held* that, in an action against a principal and surety, though the only notice of claim served upon the principal omitted any reference to a determination of the respective liability of the parties, the Iowa court had jurisdiction to determine the respective liability of the parties, and judgment determining that question is res judicata.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 554–556; Dec. Dig. ☞187.]

7. SUBROGATION ☞31(5)—PAYMENT OF OBLIGATION BY SURETY—ASSIGNMENT OF DEBT.

A surety has the right, when paying a creditor, to take an assignment of the evidence of indebtedness, to enforce it against his principal; and, though no assignment is taken, the surety will, under the doctrine of subrogation, be deemed to have received such assignment.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. § 91; Dec. Dig. ☞31(5).]

8. APPEAL AND ERROR ☞878(2)—PRESENTATION OF GROUNDS OF REVIEW—STATUTE.

Where complainants, suing on a judgment designating the rate of interest, failed to appeal from that portion of the decree reducing the rate of interest, they cannot, on defendants' appeal, complain.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3577; Dec. Dig. ☞878(2).]

9. LIMITATION OF ACTIONS ☞2(1)—WHAT LAW GOVERNS—CREDITORS' SUIT.

In a suit by surety in the nature of a creditors' suit, wherein it was sought to subject lands subsequently conveyed by the principal to the satisfaction of the surety's claim, the statute of limitations of the state in which the suit was brought governs.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 4, 6; Dec. Dig. ☞2(1).]

10. LIMITATION OF ACTIONS ☞87(3)—RUNNING OF STATUTE—NONRESIDENCE.

Code Civ. Proc. S. D. §§ 59, 60, respectively fix a 10-year limitation on actions upon judgments and 6 years upon contracts; while section 69 declares that if, when a cause of action accrues against any person, he shall be out of the state, such action may be commenced within such time after the return of the person into the state, and if, after such cause of action shall have accrued, such person shall depart from and reside outside of the state, the time of his absence shall not be taken as any part of the time limited for the commencement of the action. When judgment was recovered against defendant and his sureties, defendant was not a resident of South Dakota. Thereafter, judgment being satisfied by the sureties, defendant became a resident of the state. *Held*, that

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

suit on a judgment by the sureties, who were subrogated to the rights of the judgment creditor, was not barred until 10 years from the time defendant became a resident of South Dakota; the suit being one on a judgment, and the running of limitations being tolled during the period of defendant's nonresidence.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 458; Dec. Dig. ☜87(3).]

11. APPEAL AND ERROR ☜843(2)—REVIEW—QUESTIONS PRESENTED FOR RE-
VIEW.

Where, in an equity case, testimony complained of by appellant was unnecessary to sustain the decree, the question of its admissibility will not be determined.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3331; Dec. Dig. ☜843(2).]

12. APPEAL AND ERROR ☜724(5)—REVIEW—QUESTIONS PRESENTED.

A specification of error which declared that appellant would rely upon an error specified in an assignment at a named page of the record presents nothing for review, where at that page there was nothing in the record referring to the specification.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2999; Dec. Dig. ☜724(5).]

13. APPEAL AND ERROR ☜1073(7)—REVIEW—HARMLESS ERROR.

In a suit by a surety to obtain reimbursement for sums paid to satisfy a judgment against himself and his principal, the principal cannot complain that the court improperly allowed the surety to recover costs expended in such suit, where the surety was denied a larger sum to which he was entitled.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4245; Dec. Dig. ☜1073(7).]

14. APPEAL AND ERROR ☜1073(1)—REVIEW—HARMLESS ERROR.

Where, under Code Civ. Proc. S. D. § 321, and Laws S. D. 1903, c. 117, a judgment of the federal District Court of South Dakota could be made a lien by filing a copy with the clerk of the state circuit court, the error of the District Court in declaring its judgment a lien is harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4240; Dec. Dig. ☜1073(1).]

Appeal from the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Bills by George A. Jewett and by A. H. McVey against John Cooper, who filed cross-bills; the suits being consolidated. From a decree for complainants, defendant and cross-complainant appeals. Affirmed.

T. H. Null, of Huron, S. D. (Null & Royhl, of Huron, S. D., on the brief), for appellant.

A. B. Fairbank, of Sioux Falls, S. D. (Edmund H. McVey, of Kansas City, Mo., and Boyce, Warren & Fairbank, of Sioux Falls, S. D., on the brief), for appellees.

Before HOOK and SMITH, Circuit Judges, and REED, District Judge.

SMITH, Circuit Judge. The appellees were the plaintiffs and the appellant was the defendant in the District Court, and they will be styled here as in the court below. For some time prior to August,

1898, all the parties to this suit were residents of Des Moines, Iowa. Dr. Cooper was a practicing physician and surgeon and a considerable property owner there. He was a stockholder and director of the German Savings Bank of that city, and owned about 450 shares out of a total of 1,000 of the stock of the Fidelity Insurance Company of that city. Mr. George A. Jewett was a lumber dealer, and interested in the Brick Mutual, an insurance company of Des Moines. A. H. McVey was a practicing lawyer, and became District Judge about December, 1901. Negotiations were started in the summer of 1898 to buy the body of the stock not held by Cooper in the Fidelity Insurance Company, and 513 of the total of 1,000 shares were bought of Mr. Coffin and others. Out of this 60 shares were issued to Dr. Cooper, thus giving him individually a majority of all the stock in the company. The balance of the purchased stock, 453 shares, was issued to John Cooper, George A. Jewett, A. H. McVey, R. J. McKee, and S. G. Lee, jointly, referred to throughout this case as the syndicate. The money to pay for this stock was originally borrowed of the German Savings Bank, and the parties named signed a note for about $19,000 to that bank. Right here arises the first controversy of a material character in this case. Dr. Cooper claims the syndicate bought the stock in their own right and gave their note for the amount to the German Savings Bank, while Judge McVey and Mr. Jewett claim that it was bought by them and the other members of the syndicate as trustees for Dr. Cooper, and that they signed his note as sureties, and the stock was issued in the name of the syndicate as security to them for signing the note for the purchase money and another note for 75 per cent. of the face value to the Fidelity Company. The loan was transferred from the German Savings Bank to the Des Moines National Bank, and from there to the Iowa National Bank. It was reduced from time to time, doubtless by sales of syndicate stock, until it, at the time of the last note to the Iowa National Bank, December 8, 1900, amounted to $10,267, due in 6 months from date, with 8 per cent. interest from maturity. The stock then held by the syndicate had been reduced to 318 shares, and this was deposited as collateral security for the new note. At some time before the last note was given Lee had in some way passed out of the syndicate. Dr. Cooper became involved in many difficulties. The Fidelity Insurance Company, which had bought the Brick Mutual, was in financial difficulties, and domestic troubles had come to aid his embarrassments. He left Des Moines, and went to Lincoln, Neb. Suit was brought on the note in question against him, McVey, Jewett, and McKee in the district court of Polk County, Iowa. This court is a court of superior general jurisdiction.

[1, 2] The first question is as to whether the doctor was properly served with the original notice in this suit, that being the means by which jurisdiction is obtained in the courts of Iowa. Such a notice was issued, and a return shows it was personally served upon Dr. Cooper by G. D. Perry, a constable of Des Moines, Polk county, Iowa, in that city. Mr. Perry is now dead. The Iowa law provides that this notice may be served, by any person not a party to the action.

Code Iowa 1897, § 3516. The district court of Polk county, Iowa, expressly found that Dr. Cooper had been personally served within the county, and McVey, McVey & Graham appeared in this suit for him.

The presumption is that an attorney who appears for a party is authorized to do so. Potter v. Parsons, 14 Iowa, 286; Harshey v. Blackmarr, 20 Iowa, 161, 89 Am. Dec. 520. The burden is upon one who claims that an appearance for him has been unauthorized to show that fact (Bond v. Epley, 48 Iowa, 600), and where there is no service, but a lawful appearance (Fanning v. Minnesota Railroad Co., 37 Iowa, 379), or when there is service and an unauthorized appearance (Woodward v. Willard, 33 Iowa, 542), the court has jurisdiction. Testifying in this case more than 13 years after the alleged service, Dr. Cooper swore:

"I cannot recall the service of an original notice upon me by a constable named Perry in April, 1902. I have tried to recall that, but I don't believe it was ever served. I can't recall it. I don't believe I ever had any notice of that. I know I wasn't in Des Moines on the 9th of April. I was in Lincoln. I don't remember handing an original notice to Mr. McVey subsequent to that time. I don't remember that I had any talk with A. H. McVey about a defense to this action brought by the Iowa National Bank against me. I never authorized him to make a defense for me. I did not feel that I had any defense to make."

He also testified that he never employed the junior McVey, but only the senior one, who it seems was on the bench of the state of Iowa at the time in question. One of the principal reasons given by Dr. Cooper for thinking he was not served was that he was in Lincoln, Neb., and not in Des Moines, on the date of the alleged service, April 9, 1902; but it appears that the sheriff of Polk county, Iowa, returned that he personally served him in Des Moines, Iowa, on that day in a suit by B. F. Loose against John Cooper. Dr. Cooper was also a witness in this very case of Iowa National Bank v. John Cooper et al. on behalf of the plaintiff. As to numerous letters he testified he did not remember receiving them. As to one letter he testified:

"I don't recall receiving that letter. I don't deny receiving it. I don't remember that I did. I don't recollect the letter in the letter press copy book dated June 19, 1902, marked 'Plaintiff's Exhibit N.' There was a lot of such stuff pouring in on me, and I never paid much attention to it. I don't know whether I received it or not."

And he testified similarly as to numerous other letters written about the same time as the alleged service. We cannot find there was no service in the Iowa court in that case. We have no doubt that he was served, and that he authorized the appearance by McVey, McVey & Graham. We may add that we have examined Jamison v. Weaver, 84 Iowa, 611, 51 N. W. 65, Squires v. Jeffrey, 101 Iowa, 676, 70 N. W. 730, Shehan v. Stuart, 117 Iowa, 207, 90 N. W. 614, and Buck v. Hawley & Hoops, 129 Iowa, 406, 105 N. W. 688, and there is nothing in any of those which conflicts with our conclusion.

[3] Subsequently the Iowa National Bank filed an amendment to its petition, in which it claimed the additional sum of $9,540 and interest, less a credit of $1,950 for advances made to pay an assessment of

30 per cent. upon the 318 shares of stock which was held as collateral upon the note for $10,267, which had been voted by the board of directors, and asked judgment against all of the defendants, John Cooper, A. H. McVey, George A. Jewett, and R. J. McKee, for that amount. No notice was ever given of this amendment, which nearly doubled the amount claimed. Jewett, McVey, and McKee filed answer to this amended petition. On June 16, 1902, the district court of Polk county, Iowa, rendered judgment in favor of the Iowa National Bank and against Dr. Cooper for $18,930.55, and $229.30 attorney's' fees and costs. These attorney's fees were taxed upon the whole amount of the judgment at the rates fixed by Code Iowa, § 3869. This judgment was valid to the extent of the amount of the note for $10,267 and interest, attorney's fee, and costs; but there having been no notice of the balance, and only evidence of doubtful admissibility that Dr. Cooper's attorneys, who had by that time assumed a hostile attitude, had any authority to waive notice and appear for him without notice, we would be loath to hold that the judgment in excess of the amount of the note was valid, but for reasons which will hereafter appear that does not affect this case.

The Iowa National Bank had two claims against the four defendants, one for $10,267 and interest and attorney's fees on the note, and one for $9,540 and interest upon the assessment paid by the bank on the syndicate stock and good as against the same persons. Dr. Cooper had deposited as collateral security for these debts 407 of his individual shares of stock in the Fidelity Company and deeds for certain real estate in and about Des Moines. This property was so deposited that, while a court of equity could have aided in extinguishing the equity of redemption, it was not necessary to resort to such court to convert the property into money. The district court of Polk county rendered a decree against R. J. McKee, A. H. McVey, and George A. Jewett on June 6, 1903. By this decree it held that they were not liable upon the claim for any part of the assessment advanced of $9,540 upon 318 shares of stock, but were liable for the $10,267 and interest and attorney's fees on the note for the balance due then as sureties for Dr. Cooper, and that after crediting thereon the $1,950 realized from the sale of the Cooper stock there was due thereon $9,690.94, with 8 per cent. interest from the 13th day of April, 1903, $136.91 attorney's fees, with 6 per cent. from April 13, 1903, and costs. The plaintiff appealed from said decree to the Supreme Court of Iowa, which at first affirmed it on November 18, 1904 (Iowa National Bank v. Cooper, 101 N. W. 459); but subsequently the opinion was withdrawn and a new opinion was filed May 19, 1906 (Iowa National Bank v. Cooper, 131 Iowa, 556, 107 N. W. 625), in which the court held that the members of the syndicate were all liable for the amount of the loan to pay advances, $9,540, and ordered that the case be remanded for a decree in harmony with that opinion. On October 25, 1906, an application for a rehearing was denied. On March 9, 1907, the district court of Polk county entered a new decree against Jewett, McVey, and McKee for $6,609, with interest at 8 per cent. from March 2, 1907, and attorney's fees of $169.31, and costs, after applying the credits, and in the decree it was expressly

provided that the proceeds of the Cooper real estate and of the 318 shares of syndicate stock should be applied to the payment of the $9,540 advanced on February 2, 1902, upon the syndicate stock, *with interest thereon at 6 per cent.*

It will be remembered the bank held 318 shares deposited as collateral by the syndicate, but this was worth more than an equal amount of Dr. Cooper's shares, because the assessment of $30 a share on it had been paid, while upon his it had not been so paid. The 407 shares of Dr. Cooper were sold, and produced net $1,950 as of February 1, 1902, and under all the decrees in Iowa this was to be credited upon the note for $10,267. The real estate produced net $4,923.18 as of August 19, 1903. The 318 shares of syndicate stock produced net $6,153.72 as of January 31, 1905. These two latter amounts were ordered applied on the charges for advances of $9,540, and as they were credited $4,923.18 upon August 19, 1903, and $6,153.72 on January 31, 1905, they slightly more than paid the entire sum of $9,540 and interest at 6 per cent., the rate fixed by the court. This left only the note for $10,267, upon which the final judgment in Iowa National Bank v. Cooper et al. was rendered, and of that suit the court undoubtedly had jurisdiction. The court in this decree found there was due on this note, after crediting the $1,950 derived from the sale of the Cooper stock, $9,690.94, with 8 per cent. interest from April 13, 1903.

It is agreed between the parties that Jewett and McVey paid the following sums upon the decree in the Polk county district court: March 10, 1906, $5,000; March 15, 1906, $443.89; March 15, 1906, $85.18; December 13, 1906, $19.81; March 26, 1907, $6,814.19; March 26, 1907, $201.10—total, $12,564.17. In December, 1912, and January, 1913, Jewett and McVey filed separate bills in equity in the District Court of the United States for the District of South Dakota against Cooper and one Osbun J. Marshall. These were in the nature of creditors' bills, in which the complainants sought to be subrogated to the rights of the Iowa National Bank as to the sums paid on the decree in the district court of Polk county, Iowa, and to set aside a conveyance of 320 acres of land in South Dakota made by Cooper to Marshall. The defendants answered, and Cooper filed a counterclaim, and the plaintiffs filed replications and answers to the counterclaim. Subsequently the cases were consolidated by consent of parties and upon a trial a decree was entered for the plaintiffs, and defendant Cooper appeals.

[4, 5] It is contended that, as neither the Iowa National Bank nor the plaintiffs had ever obtained judgment in South Dakota, a creditors' bill could not be maintained upon the decree in Iowa. Broadly speaking this is true, but the United States District Court undoubtedly had jurisdiction of a law action for the amount paid by Jewett and McVey. The new rules in equity became effective February 1, 1913, and provided:

"22. If at any time it appear that a suit commenced in equity should have been brought as an action on the law side of the court, it shall be forthwith transferred to the law side and be there proceeded with, with only such alteration in the pleadings as shall be essential.

"23. If in a suit in equity a matter ordinarily determinable at law arises,

such matter shall be determined in that suit according to the principles applicable, without sending the case or question to the law side of the court."

No point seems to have been made on this question in the court below. No demurrer was filed, nor was there any suggestion in the answer on the subject. No motion to transfer to the law docket was made, but, on the contrary, so far as it goes the parties, as shown by the decree in this case, which was rendered December 18, 1914, expressly waived a trial by jury; but if the plaintiffs were entitled to subrogation, as we shall see they were, this itself was a purely equitable right. Ketchum v. Duncan, 96 U. S. 659, 667, 24 L. Ed. 868; 37 Cyc. 363 et seq. We therefore think the District Court as a court of equity had jurisdiction to proceed in this case.

[9] The district court of Polk county, Iowa, expressly decreed that Jewett and McVey were liable only as sureties upon this note, and there is nothing in either of the opinions of the Supreme Court of Iowa which even tends to weaken that holding. It is strenuously contended that the court in Polk county had no jurisdiction to determine such a question as between the defendants. This would ordinarily be true. The defendant correctly contends that ordinarily a notice of the plaintiff's claim does not vest in the court, without additional notice, any right to adjudicate any matters as between the defendants. He cites cases to sustain the proposition that a judgment against a plaintiff in favor of a defendant determines nothing between the latter and a codefendant, because, although both are parties to the action, they are not "adversary parties," as that phrase is applied to the subject of former adjudication. This point could be sustained, but for the provisions of the Iowa Code of 1897, which contained the following sections:

"Sec. 3773. In an action by several plaintiffs, or against several defendants, the court may, in its discretion, render judgment for or against one or more of them when a several judgment is proper, leaving the action to proceed as to the others."

"Sec. 3779. When a judgment is rendered against a principal and his surety, it shall recite the order of their liability therefor, and the term 'surety' includes all persons whose liability on the claim is posterior to that of another."

"Sec. 3966. The clerk issuing an execution on a judgment against principal and surety shall state in the execution the order of liability recited in the judgment, and the officer serving it shall exhaust the property of the principal first, and of the other defendants in the order of liability thus stated; but each person subsequently liable shall, if requested by the officer, point out property owned by the party liable, before him, to obtain the benefits of this provision. To obtain the benefits of this section, the order of liability must be recited in the execution, and the officer holding it must separately return thereon the amount collected from the principal debtor and surety."

"Sec. 3967. When the principal and surety are liable for any claim, such surety may pay the same, and recover thereon against all liable to him. If a judgment against principal and surety has been paid by the surety, he shall be subrogated to all the rights of the creditor, and may take an assignment thereof, and enforce the same by execution or otherwise, as the creditor could have done. All questions between the parties thereto may be heard and determined on motion by the court, or a judge thereof, upon such notice as may be prescribed by it or him."

Under these sections the proceedings in Polk county, Iowa, as between the defendants, "were adversary," notwithstanding the com-

mon-law rule to the contrary, and the question as to whether the defendants were all principals, or a principal and his sureties, is res adjudicata.

[7, 8] The District Court seems to have determined the question anew, and reached the same conclusion as the Iowa courts, and with its finding there seems to have been no cause for complaint. The plaintiffs have not appealed, and no more relief can be granted them than was given by the District Court; but the adjudication was that Dr. Cooper was the principal, and these plaintiffs were only sureties, while the District Court below seems to have thought that as to 15 shares out of 318 the plaintiffs should be charged as principals. We would have no criticism of such a finding, but for the fact that, right or wrong, it had been adjudicated otherwise by the Iowa court. The court allowed only 7 per cent. interest upon the claim from March 26, 1907. The note upon which the right of subrogation is based provided for 8 per cent. and the decree in Iowa provided for the same rate. It is provided by section 3039 of the Iowa Code that:

"The judgment or decree shall draw interest at the rate expressed in the contract, not exceeding eight cents on the hundred by the year, which rate must be expressed in the judgment or decree."

In 37 Cyc. page 412, it is said:

"A surety has the right, when paying the creditor, to take an assignment of the evidence of indebtedness, and can enforce it against his principal; and upon the doctrine that equity considers that as done which ought to be done, although no actual assignment is made, the debt is considered the payer's, payment by the surety being equivalent to a purchase from the creditor, and operating as an equitable assignment of the debt, and all its incidents, to the former."

If the plaintiffs were only entitled to legal interest upon the amount paid by them, we see no reason why this should not be governed by the legal rate in Iowa, which is 6 per cent.; but we see no reason, if they are subrogated to the rights of the Iowa National Bank, why they are not entitled to the contract rate, which is 8 per cent., notwithstanding the holding in Waldrip v. Black et al., 74 Cal. 409, 16 Pac. 226. But there is no assignment of errors upon this subject by the appellant, and, the plaintiffs not having appealed from the allowance of 7 instead of 8 per cent., we need give this question no further consideration.

[9, 10] The defendants pleaded the statute of limitations. There is no doubt that this question is to be determined by the law of South Dakota. Quinette v. Pullman Co. et al., 229 Fed. 333, —— C. C. A. ——. The statutes of limitations of South Dakota provide:

"Sec. 39. Civil actions can only be commenced within the periods prescribed in this Code, after the cause of action shall have accrued, except where, in special cases, a different limitation is prescribed by statute. But the objection that the action was not commenced within the time limited, can only be taken by answer."

"Sec. 57. The periods prescribed in section 39 of this Code for the commencement of actions other than for the recovery of real property, shall be as follows:"

"Sec. 59. Within ten years: 1. An action upon a judgment or decree of any court of the United States, or any state or territory other than this state

within the United States, shall be commenced within ten years from the date thereof.

"Sec. 60. Within six years: 1. An action upon a contract, obligation or liability, express or implied, excepting those mentioned in sections 58 and 59 of this Code."

"Sec. 69. If, when the cause of action shall accrue against any person, he shall be out of the state, such action may be commenced within the terms herein respectively limited, after the return of such person into this state; and if, after such cause of action shall have accrued, such person shall depart from and reside out of the state, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action."

As before stated, the bill of Jewett appears to have been filed December 31, 1912, and the bill of McVey on January 2, 1913. There is nothing to show when subpœna was issued or served on the defendants in either case, but an answer in both cases was sworn to February 25, 1913, and they are marked filed in the District Court on February 26, 1913. This suit was commenced not later than the last named date. Dr. Cooper was never a resident of South Dakota until April, 1903. We see no reason why the tolling statute of South Dakota does not apply to this case, and we so construe it. If, then, the 6-year statute applied, the first four items were barred when the action was brought; but, if the 10-year statute applied, then none of them were barred. The plaintiffs shall, as already indicated, be deemed to hold an equitable assignment of the judgment in favor of the Iowa National Bank by reason of having paid it, and this suit is upon that judgment, and as to it the statute of limitations is 10 years and whatever time is allowed under the tolling statute. We conclude that no part of the cause of action was barred.

[11] We have said nothing as to the testimony of Edmund H. McVey, because we have not found it necessary to consider it. In an equity case it is not necessary to pass upon all questions upon the admissibility of evidence which the court below admits, but this court finds it unnecessary to consider. If this court deemed it essential to make out the plaintiffs' case to consider this evidence, it would then, and not until then, become essential to consider whether the evidence was admissible or not. Until such question arises the question as to whether he testified to matters at all confidential as between attorney and client is interesting, but not material.

[12, 13] Some question seems to be raised as to whether the decree below included costs made in the Iowa courts in litigating the question as to whether the plaintiffs in this case were principals or sureties on the note sued on. So far as the attorney's fees taxed as part of the costs under the Iowa law are concerned, defendant is liable therefor. The judgments are all blank as to any other costs. This question is vaguely raised by the third assignment of errors and by the third specification of errors, which is:

"III. Appellant will rely upon the error specified in assignment III (Record, pages 179) relating to appellees recovering the full amount expended by them including costs of litigation."

We have examined pages 179 of both the written and printed record, and are unable to find that at either place there is any reference to

this subject. Upon this ground alone this question of costs can receive no further attention. City of Lincoln v. Sun Vapor Street Light Co., of Canton, 8 C. C. A. 253, 59 Fed. 756; Orr & Lindsley Shoe Co. et al., v. Needles et al., 15 C. C. A. 142, 147, 67 Fed. 990, 994; Chicago Great Western Ry. Co. v. Egan, 86 C. C. A. 230, 159 Fed. 40, 46; Northwestern Steam Boiler & Mfg. Co. v. Great Lakes Engineering Works, 104 C. C. A. 52, 181 Fed. 38, 44; Illinois Central R. Co. v. Nelson, 128 C. C. A. 525, 531, 212 Fed. 69, 75; Whitfield v. Krawza, 130 C. C. A. 523, 214 Fed. 83; Colorado Yule Marble Co. v. Collins, 230 Fed. 78, —— C. C. A. ——; William C. Kinser v. United States, 231 Fed. 856, —— C. C. A. ——.

There are two other reasons why this question cannot be considered: In the first place, it is a matter of common knowledge that the Iowa Supreme Court renders final judgment against the defeated party in that court, without reference to the subsequent decision in the main case. It is therefore evident that judgment has already been rendered against Jewett and McVey in the Supreme Court of Iowa for all the costs of the case appealed to that court. Second. We have carefully examined the entire record, and cannot find anything definite as to what costs were made in the defense by Jewett and McVey which could not properly be charged to this defendant. Third. The action of the trial court in charging $^{15}/_{818}$ of the proceeds of the syndicate stock, or $282.25, is in conflict, as we interpret it, with the adjudication in Iowa, and its failure to allow 8 per cent. in place of 7 upon the payments made by the plaintiffs far and away exceeds the entire costs as far as we can ascertain, including both those which the defendant was liable for and those he was not. No relief can therefore be granted to the defendant upon this assignment of error.

[14] We have grave doubt about the validity of the portion of the decree which adjudicates that the sum due the plaintiffs is a lien upon what we shall call the Osbun J. Marshall land, when at the time of the commencement of this action no judgment had been obtained in South Dakota; but the statutes of South Dakota provide (section 321, Code of Civil Procedure) that a judgment in the circuit court of South Dakota should be a lien on the real property of the judgment defendant in the county, and section 2 of chapter 117 of the Laws of 1903 provided that a judgment in the federal court should be a lien to the same extent as the judgments of the circuit court of the state after being filed and docketed with the clerk of the circuit court. To secure a specific lien upon what we have called the Marshall land, all that was necessary was for the plaintiffs to file their judgment with the clerk of the circuit court of Jerauld county, S. D.

In view of these statutes, the decree was without prejudice to the rights of the defendant, and this whole question seems to be argued with a view to the dismissal of the case, rather than criticism of this particular portion of the decree. We do not understand that this point is assigned as error by the defendant.

It is ordered that the decree of the District Court be affirmed.